Mohamed KAHIN dba Al Baraka
Store, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 99–CV–1903–J LAB.

United States District Court,
S.D. California.

May 2, 2000.

Kerry Lee Armstrong, Law Offices of Kerry Lee Armstrong, San Diego, CA, for Mohamed Kahin.

U S Attorney CV, U S Attorneys Office, Civil Division, San Diego, CA, for USA.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JONES, District Judge.

This matter comes before the Court on Defendant United States of America's motion for summary judgment on Plaintiff Mohamed Kahin's request for judicial review of an administrative action permanently disqualifying his store from participation in the Food Stamp Program. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant maintains that no dispute of material fact exists as to Plaintiff's alleged violations of the Food Stamp Program rules. FED. R. CIV. P. 56. For the reasons set forth below, the Court GRANTS Defendant's motion for summary judgment.

## BACKGROUND

On May 6, 1999, Plaintiff's grocery store, Al–Baraka Store, in San Diego, California was administratively charged with violating several provisions of the Food Stamp Program by the Food and Nutrition Service of the United States Department of Agriculture ("FNS"). On June 22, 1999, after considering Plaintiff's responses to these charges and finding them unpersuasive, the FNS permanently disqualified Plaintiff's store from the Food Stamp Program. This decision was upheld on administrative review on August 18, 1999. Plaintiff now seeks de novo judicial review of this determination pursuant to 7 U.S.C. § 2023.

### A. The Food Stamp Program and the Electronic Transfer System

The Food Stamp Program was implemented by Congress in order "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. Specifically, the Food Stamp Program operates by augmenting the food purchasing powering of low-income families; qualifying households are allotted a certain amount of "coupons" which can be redeemed at participating food retailers for eligible food products. 7 U.S.C. § 2013; 7 C.F.R. § 278.2(f).

Only approved stores are eligible to accept food stamps in exchange for eligible food items. 7 U.S.C. § 2018. Additionally, participating retailers must abide by the rules and regulations governing the Food Stamp Program. In fact, an approved store may be disqualified from the program if it accepts or uses food stamps in violation of the program regulations. 7 U.S.C. § 2021(a).

Today, in the San Diego area, the Food Stamp Program is no longer implemented through the use of physical coupons; rather, the food stamp system has been replaced by an Electronic Benefit Transfer ("EBT") system which utilizes plastic cards with magnetic strips. (Decl. Michael Wimer at ¶ 2). Much like ATM cards, the EBT cards are swiped by the participating retailer and the recipient's food stamp account is automatically debited for the amount of the purchase. *Id.* at ¶ 3. A record of these transactions is kept for various accounting and reporting purposes. *Id.*

### B. The Disqualification of Plaintiff's Store

Plaintiff owns and operates the Al–Baraka Store located on 4975 University Avenue in San Diego, California. The Al–Baraka Store specializes in providing Halal food products to the primarily Somali community it serves. (Pl. Opp., Exh. 1 at 2). In fact, the store purports to be "the oldest and the most popular store among Somali and Ethiopian customers in all East San Diego Halal meat stores." *Id.* at 1.

On May 6, 1999, the Al–Baraka Store was charged with Food Stamp Program violations on the basis of a pattern of irregular and/or inexplicable transactions recorded by the EBT system which indicated to knowledgeable reviewers that the violations were likely occurring. Specifically, the FNS noted that during the time period from November of 1998 to February of 1999, the Al–Baraka Store's EBT transactions revealed (1) rapid, repetitive electronic debits in unreasonable time periods, (2) excessively high numbers of EBT debits of round dollar amounts, (3) a high number of balance depletion transactions, and (4) electronic card debits in large dollar amounts. (Def. Mot., Exh. 1, at 24–43). Additionally, the charge letter detailed that the FNS had verified that the Al–Baraka Store had no shopping carts, one cash register and limited stock which could not sustain the type of transactions recorded in the EBT data. *Id.* at 41. Moreover, the charge letter highlighted that while Plaintiff's total projected annual food sales in his application to become an authorized retailer were $130,000, his food stamp redemptions alone in the four month period

from November of 1998 to February of 1999 were $121,109.

The FNS concluded that these patterns were consistent with the "trafficking" of food stamps. Trafficking is defined as the "buying or selling of coupons . . . or other benefit instruments for cash or consideration other than eligible food." 7 C.F.R. § 271.2. Permanent disqualification is required under the statute "on the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store." 7 U.S.C. § 2021(b)(3)(B).

In response to these charges, Plaintiff argued that the patterns detected in the EBT data were not indicative of program violations but were rather representative of the somewhat unusual purchasing patterns of Plaintiff's Somali customers. Plaintiff alleged that the Somali customers phoned-in their orders to the store at the beginning of the month and that several families arrived at the store together to pick up their pre-packaged groceries due to the need to car pool. (Def. Mot., Exh. 1 at 20). Hence, the rapid, repetitive transactions. Moreover, Plaintiff alleged that the Somali families are unusually large, purchase food products in bulk, and purchase their entire monthly food supply at the beginning of the month when the food stamps are first available; thereby explaining the large transactions and balance depletions. (Def. Mot., Exh. 1 at 21). Plaintiff further argued that his store does have the inventory to sustain the level of activity that the EBT transactions suggest; FNS investigators failed to recognize the 6x3 meter back storage area where the monthly stock is kept. *Id.* at 20. The FNS was not persuaded by these arguments and the allegations in the charge letter were adopted on June 22, 1999. Plaintiff's store was thereby permanently disqualified from the Food Stamp Program.

On August 18, 1999, after an administrative review, the decision of the FNS was again upheld. The reviewing officer found that (1) no evidence of the phone-in orders was presented, (2) store records of acquisitions did not match the large orders that allegedly take place in the early part of each month, and (3) the store records of the cost of documented acquisitions of stock far undervalue the alleged value of the sales.[1] (Def. Mot., Exh. 2 at 74–76). Hence, the reviewing officer determined that no reasonable explanation for the suspicious pattern in the EBT transactions had been proffered and that permanent disqualification of Plaintiff's store was an appropriate sanction. Plaintiff now timely seeks de novo judicial review.

## LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party seeking summary judgment always bears the initial responsibility of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Id.; Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To the extent the moving party fails to satisfy this initial burden of production, summary judgment must be denied. *See Henry v. Gill Industries, Inc.*, 983 F.2d 943, 949–50 (9th Cir. 1993).

If, however, the moving party makes the initial showing, the burden then shifts to

---

1. The reviewing officer noted that in November of 1998 invoice records of acquired inventory were $8,300 while food stamp redemptions were $28,100. Likewise, in December of 1998, invoice records for inventory stock were $13,400 while redemptions were $31,- 000. The reviewing officer concluded that the differentials in the inventory value and redemptions could not reasonably be attributed to mere mark-up. (Pl. Mot., Exh. 2 at 75–76).

the nonmoving party to demonstrate that summary judgment is not appropriate. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. To make such a showing, "the nonmoving party must go beyond the pleadings and ... designate specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(c); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

At the summary judgment stage, it is not the function of the judge to weigh the evidence or make credibility determinations. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Rather, the judge should simply decide whether the evidence demonstrates a genuine factual dispute for trial. *Id.* at 250–251, 106 S.Ct. 2505. When making such a determination, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor."*Id.* at 255, 106 S.Ct. 2505.

**B.  Review of Food Stamp Program Disqualification**

■ Under 7 U.S.C. § 2023(a)(13), a store which "feels aggrieved by [a] final determination" of the FNS may seek judicial review in the district court in which it resides or is engaged in business. 7 U.S.C. § 2023(a)(13). This review "shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). Unlike the "substantial evidence" standard employed in reviewing determinations under the Administrative Procedure Act, 5 U.S.C. § 500, et. seq., the "trial de novo" provision allows the court to look beyond the administrative record and "reach its own factual and legal conclusions." *Ramirez v. United States,* 514 F.Supp. 759, 763 (D.P.R.1981); *see also Kim v. United States,* 121 F.3d 1269, 1271 (9th Cir.1997). While the Court may consider any admissible evidence offered by either the govern-

ment or the store owner, the "burden is placed upon the store owner to prove by a preponderance of the evidence that the violations did not occur." *Kim,* 121 F.3d at 1271. Hence, if the store owner fails to meet this burden and fails to demonstrate a material dispute of fact as to the existence of a program violation, summary judgment may be granted in favor of the government.

■ Unlike the broad standard of review for the administrative action itself, the court's review of the sanction imposed by the FNS is governed by the more deferential standard of "arbitrary and capricious." *Wong v. United States,* 859 F.2d 129, 132 (9th Cir.1988). "Under the arbitrary and capricious standard, the court examines 'the sanction imposed by the FNS in light of the administrative record to judge whether the agency properly applied the regulations [and] to determine whether the sanction is unwarranted in law ... or without justification in fact.'" *Id.* (citing *Plaid Pantry Stores, Inc. v. United States,* 799 F.2d 560, 563 (9th Cir. 1986)).

**DISCUSSION**

In support of its motion for summary judgment, the government argues that Plaintiff has failed to raise triable issues of fact as to the existence of Food Stamp Program violations by the Al–Baraka Store. Specifically, the government argues that Plaintiff's explanations are "strained" and that Plaintiff's own records "reflect rather than negate the fact that violative sales occurred." (Def. Mot. at 8). Plaintiff, on the other hand, asserts that he has "presented genuine issues of material fact in this case to overcome the government's motion for summary judgment." (Pl. Opp. at 3).

**I.  Review of Propriety of Administrative Action**

■ Plaintiff's store has been permanently disqualified as a result of the FNS' findings that Plaintiff trafficked in food

stamps. Under 7 U.S.C. § 2021(b)(3)(B), permanent disqualification is required "on the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store." 7 U.S.C. § 2021(b)(3)(B). Trafficking is defined as the "buying or selling of coupons ... or other benefit instruments for cash or consideration other than eligible food." 7 C.F.R. § 271.2. Here, the FNS relies on the irregular and inexplicable patterns in the EBT data, as well as on the sheer volume of transactions compared to inventory of store goods, to find conclusive evidence of Plaintiff's trafficking of food stamps.

In order to preclude summary judgment, Plaintiff must raise material issues of fact as to each of the violations charged against the Al–Baraka Store. Since permanent disqualification is warranted on "the first occasion" of coupon trafficking, it is Plaintiff's burden to raise material issues of fact as to each of the transactions set forth as suspicious by the FNS. Plaintiff, however, offers no new evidence to the Court in the form of declarations or exhibits. Instead, Plaintiff appears to rely on the fact that sufficient material issues of fact can be gleamed from the evidence submitted in the underlying administrative proceedings. Additionally, Plaintiff argues that the FNS's failure to produce evidence indicating that Plaintiff's store was caught "red-handed" engaging in food stamp or EBT card fraud precludes summary judgment.

While the Court agrees that Plaintiff's explanations about the spending patterns of his Somali customers may tend to negate some of the inferences from the EBT data and raise some material issues of fact, they do not sufficiently account for all the suspicious activity. For example, Plaintiff has never proffered an explanation for the rapid, repetitive transactions to the *same* customer indicated in the EBT data. On December 4, 1998, Plaintiff redeemed $217.53 from Recipient # 0K40115000's account at 11:12 a.m. and then redeemed $320.00 two and a half minutes later.

(Def. Mot., Exh. 1 at 28). Plaintiff's explanation that the food was pre-packaged and that different families arrived together due to car pooling does not account for why one individual would have two large purchases rung up separately in this fashion. Moreover, on February 2, 1999 and February 3, 1999, the same pattern occurred again with three additional recipients, one of which was the same individual as in the December transaction redeeming $98.22 at 12:47 p.m. and one minute later redeeming $400.00. (Def. Mot., Exh. 1 at 33). Since only one instance of coupon trafficking is sufficient to establish a violation, the fact that Plaintiff has failed to explain these transactions or raise any material issues of fact with respect to them indicates that Plaintiff has failed to meet his burden.

Additionally, the Court is not impressed with Plaintiff's explanation about the differential as to the stock purchased and the sales made by the store as noted by the Administrative Review Officer. (Def. Mot., Exh. 2 at 76). Plaintiff argues that he is "aware of no administrative law or rule that makes it illegal to make money in this country by selling groceries at a comfortable profit level." (Pl. Opp. at 6). Hence, Plaintiff does not contest the officer's tabulations but rather contests his inferences. The Court, however, agrees with the Review Officer that a mark-up of more than 50% is not reasonable and cannot be attributed exclusively to Plaintiff's "good fortune and smart business sense." (Pl. Opp. at 6). Hence, the Court finds no material dispute of fact as to the amount of stock purchased or food stamp redemptions made. Accordingly, the Court finds the evidence indicative of program violations.

Finally, as to Plaintiff's argument that summary judgment is inappropriate without evidence of "red-handed" violations by the Al–Baraka Store, the Court is not persuaded. While it is true that there are no published opinions which rely primarily on evidence generated from EBT data, the statute clearly intended that EBT data be

used for this purpose. Reliance on evidence garnered "through a transaction report under an electronic benefit transfer system" is explicitly recognized under the statute. 7 U.S.C. § 2021(a). It may well be easier for a plaintiff to rebut the inference of EBT data than evidence of "red-handed" violations, but this does not mean that the FNS cannot rely on it where, as here, the Plaintiff has failed to rebut or raise material issues of fact as to the logical inferences from the data. Accordingly, the Court finds that no material dispute of fact exists as to the FNS's charges of food stamp trafficking and the Court GRANTS Defendant's motion for summary judgment.

## II. Review of Permanent Disqualification Sanction

■ Having found that Plaintiff violated Food Stamp Program rules by trafficking in food stamps, the Court must review the propriety of the sanction imposed by FNS. FNS's sanction will only be overturned if "arbitrary or capricious." *Wong*, 859 F.2d at 132. Here, the FNS permanently disqualified the Al–Baraka Store from the Food Stamp Program. This is sanction is warranted in law as the governing regulations require permanent disqualification on "the first occasion" of a violation based on trafficking. 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1)(i). Additionally, the sanction is justified in fact as established above. Accordingly, the Court finds that the sanction is not arbitrary and capricious and upholds Plaintiff's permanent disqualification.

### CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's motion for summary judgment.[2]

**IT IS SO ORDERED.**

---

**2.** Plaintiff's second cause of action for a stay of the permanent disqualification is MOOT in light of the Court's determination that the FNS's administrative actions were warranted.