NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0921n.06
Filed: December 20, 2006

No. 06-3156

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| McCLAIN'S MARKET, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| UNITED STATES OF AMERICA, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

**Before: SUTTON and GRIFFIN, Circuit Judges; and COHN, District Judge.**[*]

**AVERN COHN, District Judge**. This is a case under the Food Stamp Act, 7 U.S.C. § 2011.

Plaintiff-Appellant McClain's Market (McClain's) sought judicial review of an administrative

decision of the Food and Nutrition Service (FNS) disqualifying it from participating in the Food

Stamp Program. The district court granted summary judgment in favor of the government.

McClain's appeals. We affirm.

I.

McClain's is a family owned and operated business that was licensed to participate in the

Food Stamp Program in 1997. McClain's is owned by Pamela Hubbard (Hubbard). In February,

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of
Michigan, sitting by designation.

2003, McClain's became authorized to participate in the Women, Infants, and Children program.

In August, 2003, FNS Program Specialist Mary Graf (Specialist Graf) received a referral that McClain's was paying cash to customers for food stamp benefits. Specialist Graf conducted a review of the electronic benefit transaction (EBT) data, and concluded that there were suspect food stamp redemptions occurring at McClain's. Further review indicated that between August 1, 2003, and January 31, 2004, there was significant unusual EBT activity at McClain's. Specialist Graf visited McClain's to determine if the store's inventory and physical layout was capable of supporting the amount and type of sales reflected in the EBT data. She observed that the store was small with only two short aisles not capable of accommodating shopping carts. The store sold canned and packaged foods, as well as snack foods. The store did not sell fresh or frozen meats, frozen fruits or vegetables, or meats or cheeses by the pound.

Specialist Graf identified three types of suspicious activity in the EBT data. First, there were nineteen (19) instances of large withdrawals by two or more households within an unusually short time.[1] Second, there were seventy-five (75) instances of multiple large withdrawals by single households within an unusually short period of time.[2] Third, there were fifty-five (55) other excessively large withdrawals.[3] The national average food stamp transaction

---

[1]For example, a household made an EBT transaction at 8:10.37 for $22.17. Fifty-four (54) seconds later, a second household made a transaction for $95.76. Eighty-nine (89) seconds later, a third household spent $71.82.

[2]For example, one household made five separate purchases within a single hour for $79.80, $75.81, $3.70, $7.00, and $71.20.

[3]For example, there was a redemption for $287.28.

2

at a convenience store is approximately $6.00.

Based upon this suspicious activity, the FNS charged McClain's with trafficking in food stamps. McClain's responded to the charges orally and in writing, stating that it spent $348,744.00 to stock the store between January, 2003, and March, 2004. Specialist Graf noted that at least 47% of this amount was for alcohol purchases from distributers, and that alcohol cannot legally be purchased with food stamps. McClain's expense report showed that $117,691.00 was used to buy groceries from distributers, but a significant amount of this would go to non-food stamp eligible items.

After a hearing, FNS permanently disqualified McClain's from the Food Stamp Program. McClain's appeal to the Director of the Administrative Branch of the FNS was rejected in October, 2004.

On October 8, 2004, McClain's filed a complaint in federal district court, appealing the administrative decision that disqualified it from participation in the Food Stamp Program. On November 4, 2005, the district court granted the government's motion for summary judgment. McClain's timely appealed.

II.

A.

We review a grant of summary judgment *de novo*. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

B.

McClain's argues that the district court erred when it found that there was no genuine issue of material fact regarding whether it engaged in food stamp trafficking. Specifically, McClain's says that Hubbard's affidavit[4] and her written responses to FNS show that the store's enrollment in WIC led to a dramatic increase in sales which in turn led to the unusual EBT data that FNS observed.

The Food Stamp Program requires permanent disqualification on "the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store." 7 U.S.C. § 2021(b)(3)(B). To survive summary judgment, a plaintiff in a Food Stamp Program disqualification case must raise material issues of fact as to *each* alleged violation. *Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000) (emphasis added).

McClain's only evidence is Hubbard's affidavit and her written and oral statements. Her

---

[4]McClain's brief erroneously refers to Hubbard's "deposition." However, there is no deposition in the record.

affidavit states that: (1) the increased customer traffic at McClain's was due to participation in WIC and the closing of a number of competing stores, (2) the store layout is not indicative of the significant increase in customers, (3) the increased customer traffic necessitated an additional checkout lane and a plan for further expansion, and (4) McClain's had paid local vendors $348,743.64.

Hubbard, however, does not directly explain any of the 149 unusual transactions noted by FNS, any one of which is sufficient to establish a violation. Rather, Hubbard offers only general justifications for large expenditures at McClain's. Further, McClain's does not dispute that at least 47% of the $348,743.64 was used to purchase alcohol from distributors. Food stamps cannot be used to purchase alcohol.

As carefully explained in the district court's thorough opinion, McClain's has failed to show a genuine issue of material fact exists as to the numerous alleged violations. Hubbard's evidence falls short. McClain's has simply offered no evidence to explain the volume, frequency, or size of the transactions identified by the government. In the absence of any evidence to rebut the government's substantial evidence of illegal activity, the district court properly granted the government's motion for summary judgment.

III.

For the reasons stated above, the decision of the district court is AFFIRMED.

5