Sadeo **ALKABSH** d/b/a **Liberty Mart, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civil No. 10–02503.**

United States District Court, W.D. Tennessee, Western Division.

Aug. 24, 2010.

---

Handel R. Durham, Jr., Durham & Associates, Kenneth M. Margolis, Margolis Law Office, Memphis, TN, for Plaintiff.

Gary A. Vanasek, William W. Siler, U.S. Attorney's Office, Memphis, TN, for Defendant.

## ORDER DENYING PLAINTIFF'S APPLICATION FOR TEMPORARY STAY

BERNICE BOUIE DONALD, District Judge.

Before the Court is Plaintiff Sadeo Alkabsh d/b/a Liberty Mart's ("Plaintiff") Appi.cation [sic] for Temorary [sic] Stay filed July 22, 2010. (D.E. # 7.) The United States of America ("the United States") filed a response in opposition on August 10, 2010 and a corrected exhibit to its response on August 12, 2010. On August 13, 2010, the Court held a hearing on Plaintiff's motion, during which it heard argument from both parties and the testimony of Plaintiff's witness, Floyd Rummage, an accountant who is familiar with Liberty Mart's finances. For the reasons stated herein, the Court **DENIES** Plaintiff's application for temporary stay.

## I. FACTS

Plaintiff Sadeo Alkabsh owns or operates a neighborhood retail food store at 485 Vance Avenue, Memphis, Tennessee 38126, which conducts business under the trade name of Liberty Mart. (Compl. ¶ 1.) Liberty Mart formerly participated in the Supplemental Nutrition Assistance Program ("SNAP"), a food assistance program

administered by the United States Department of Agriculture ("USDA"). (*Id.* at ¶ 7.) On or about December 1, 2009, the USDA sent Plaintiff a letter, advising him that his store violated the SNAP regulations by trafficking in food stamps. (Ex. 1 to Compl.) The letter explained that the charges were based on an analysis of Electronic Benefit Transfer ("EBT") transactions[1] that "establish clear and repetitive patterns of unusual, irregular, and inexplicable activity...." (*Id.*) Specifically, the letter stated that these records revealed: (1) multiple SNAP EBT transactions made too rapidly to be credible, (2) multiple SNAP EBT transactions made from individual benefit accounts in unusually short time frames, (3) a series of SNAP EBT transactions that exhausted the majority of all of the individual recipient's SNAP benefit account within unusually short periods of time, and (4) a series of SNAP EBT transactions in which excessively large purchase transactions were made from recipient accounts. (*Id.*) Plaintiff filed written replies challenging these allegations and provided the USDA with information and evidence to dispute the inferences drawn from the EBT evidence. (*Id.*) On or about February 19, 2010, the USDA sent Plaintiff a letter advising him that it had reviewed Plaintiff's additional information and concluded that Plaintiff was not eligible for a civil money penalty and was permanently disqualified from participation in the SNAP. (*Id.*)

Plaintiff timely sought a final review of the disqualification decision from the Administrative Review Branch of the USDA, which issued its Final Agency Decision on June 7, 2010 upholding the decision to impose on Liberty Mart a permanent disqualification from participation in the SNAP. (Ex. 2 to Compl.) The final decision was based on a finding that the USDA Field Office provided substantial evidence of trafficking violations in two of the four patterns of EBT transaction characteristics as indicated in the December 1, 2009 letter—namely that there was a pattern of multiple SNAP EBT transactions made from individual benefit accounts in unusually short time frames and of a series of SNAP EBT transactions that exhausted most or all of the individual recipient's SNAP benefit account within unusually short periods of time. (*Id.*) On July 1, 2010, Plaintiff filed a complaint in the Chancery Court for Shelby County (Tennessee), and the next day the United States removed the case to the United States District Court for the Western District of Tennessee. In his complaint, Plaintiff requests a review of the administrative decision that disqualified him from participating in the SNAP.[2]

## II. LEGAL ANALYSIS

Plaintiff asserts that he is entitled to injunctive relief pursuant to 7 U.S.C. § 2023(a)(17). The United States argues, however, that 7 U.S.C. § 2023(a)(17) does not apply to retail food stores that have been permanently disqualified from the SNAP, and as such, Plaintiff may not seek a stay from disqualification. Alternatively, the United States argues that Plaintiff

1. Food stamp benefits are delivered through electronic benefit transfer cards, *see* 7 U.S.C. § 2016(h), which look similar to and operate much like debit cards.

2. Plaintiff's complaint requests review of the administrative decision finding trafficking in SNAP benefits and in the alternative, requests the Court to consider the penalty imposed

and to determine or declare that permanent disqualification was unfair, inequitable, unwarranted, and arbitrary. Plaintiff, however, did not argue for a stay on this alternative basis, nor did he present sufficient evidence to support a stay for this reason. *See* 7 U.S.C. 2021(b)(3)(B) (requiring permanent disqualification on the first occasion of a violation based on trafficking).

cannot satisfy the requirements for obtaining a stay.

## A. Availability of Injunctive Relief

Congress implemented the Food Stamp Program in order to "safeguard the well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. Through this program, eligible households are provided the opportunity to obtain a more nutritious diet through benefits that can be redeemed at participating food retailers for eligible food products. *See* 7 U.S.C. § 2013; 7 C.F.R. § 278.2(a). In 2008, Congress amended the Food Stamp Act, renaming the Food Stamp Program as the Supplemental Nutrition Assistance Program ("SNAP"). *See* Food, Conservation, and Energy Act of 2008, Pub.L. No. 110–246, § 4001, 122 Stat. 1651, 1853. Participating food retailers must abide by the rules and regulations governing the SNAP. *See* 7 U.S.C. § 2021(a). Permanent disqualification from the program is mandatory on "the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store...." 7 U.S.C. § 2021(b)(3)(B). If a retail store feels aggrieved by a final agency decision regarding its participation in the SNAP, the store "may obtain judicial review ... by filing a complaint against the United States in the United States court for the district in which it resides or is engaged in business...." 7 U.S.C. § 2023(a)(13).

During the pendency of any such judicial review, 7 U.S.C. § 2023(a)(17) provides that:

> ... the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal.

7 U.S.C. § 2023(a)(17). The United States argues that 7 U.S.C. § 2023(a)(18) prohibits the granting of a stay in cases involving permanent disqualification based on allegations of trafficking. Section 2023(a)(18) provides:

> Suspension of stores pending review. Notwithstanding any other provision of this subsection, any permanent disqualification of a retail food store or wholesale food concern under paragraph (3) or (4) of section 12(b) [7 USCS § 2021(b)] shall be effective from the date of receipt of the notice of disqualification. If the disqualification is reversed through administrative or judicial review, the Secretary shall not be liable for the value of any sales lost during the disqualification period.

7 U.S.C. § 2023(a)(18). The USDA has interpreted this statute to mean that a permanently disqualified retailer may not seek preliminary relief and in support of this interpretation, specifically relies upon the USDA regulation, 7 C.F.R. § 279.7(d), which provides:

> Stay of action. During the pendency of any judicial review, or any appeal therefrom, the administrative action under review shall remain in force unless the firm makes a timely application to the court and after hearing thereon, the court stays the administrative action after a showing that irreparable injury will occur absent a stay and that the firm is likely to prevail on the merits of the case. *However, permanent disqualification actions taken in accordance with § 278.6(e)(1) of this chapter shall not be subject to such a stay of administrative action.* If the disqualification action is reversed through administrative

or judicial review, the Secretary shall not be liable for the value of any sales lost during the disqualification period. 7 C.F.R. § 279.7(d) (emphasis added).

Whether 7 U.S.C. § 2023(a)(17) applies to a retailer who has been permanently disqualified from participating in the SNAP appears to be an issue of first impression in the Sixth Circuit and an issue that few courts in other districts have addressed. The United States argues that in resolving this issue of statutory construction, the Court must review the USDA's interpretation of the statute under the framework articulated in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under this framework, "[w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter.... [I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron U.S.A. Inc.*, 467 U.S. at 842, 104 S.Ct. 2778.

Several district courts in various circuits have analyzed 7 U.S.C. § 2023(a)(18) under the framework detailed in *Chevron.* See, e.g., *Skyson v. United States Dep't of Agric.*, 651 F.Supp.2d 1202 (D.Haw.2009); *Ilaian v. United States Dep't of Agric.*, 87 F.Supp.2d 1047 (S.D.Cal.2000); *Lazaro v. United States Dep't of Agric.*, 186 F.Supp.2d 1203 (M.D.Fla.2001). As previously noted, *Chevron* applies only when an agency adopts a construction of a statute that it administers. While Congress has charged the Secretary of the USDA with issuing regulations necessary or appropriate for the effective administration of the SNAP, *see* 7 U.S.C. § 2013(c), because the statute at issue does not appear to be a delegation of power to the USDA but instead is directed to the statutory grant of authority to the court, the Court questions whether an application of the *Chevron* framework is appropriate in considering whether a stay is authorized. Because Plaintiff cannot succeed on the merits of his request for a temporary stay, the Court leaves unaddressed the question of whether a store that has been permanently disqualified from the SNAP may seek a stay temporarily relieving itself from disqualification pursuant to 7 U.S.C. § 2023(a)(17).

**B. Requirements for Temporary Stay**

During the pendency of judicial review of the USDA's decision to permanently disqualify a retail food store from the SNAP,

> ... the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the *applicant's likelihood of prevailing on the merits and of irreparable injury,* the court temporarily stays such administrative action pending disposition of such trial or appeal.

7 U.S.C. § 2023(a)(17) (emphasis added). Thus, pursuant to the statute, the Court must assess both the likelihood of Plaintiff prevailing on the merits of his case at trial and the risk of irreparable injury absent a stay.[3]

---

**3.** While Plaintiff presented evidence and argument relating to the public interest in granting a stay, 7 U.S.C. § 2023(a)(17) on its face specifically enumerates only two factors—the applicant's likelihood of prevailing on the merits and the risk of irreparable injury

## 1. Likelihood of Success on the Merits

To prevail on his claim that the USDA erroneously disqualified him from participation the SNAP, Plaintiff must prove the invalidity of the administrative action by a preponderance of the evidence. *See Warren v. United States,* 932 F.2d 582, 586 (6th Cir.1991). In conducting its review, the district court must conduct a trial de novo on Plaintiff's challenges to the USDA's decision. *Id.* at 586. The court must "make its own findings based upon the preponderance of the evidence and not limit itself to matters considered in the administrative proceeding." *Id.* In reviewing the agency's decision, the court is first to determine "if there were violations of the [Food Stamp] Act, and if there were, to what extent violations did occur and under what circumstances." *Woodard v. United States,* 725 F.2d 1072, 1076 (6th Cir.1984). Next, the court should "determine whether administrative action taken with respect to violations found, properly complied with the authority granted under the law and reasonable regulations." *Id.* In reviewing the validity of the sanction imposed by the agency, the court must only determine "whether the agency properly applied the regulations, i.e. whether the sanction was unwarranted in law ... or without justification in fact...." *Id.*

Trafficking in SNAP benefits is defined as the "buying or selling of coupons, ATP cards or other benefit instruments for cash or consideration other than eligible food...." 7 C.F.R. § 271.2. Permanent disqualification from the SNAP is mandatory on "the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store...." 7 U.S.C. § 2021(b)(3)(B). Only one instance of trafficking is sufficient to establish a violation. *See McClain's Market v. United States,*

214 Fed.Appx. 502, 505 (6th Cir.2006) (citing *Kahin v. United States,* 101 F.Supp.2d 1299, 1303 (S.D.Cal.2000)) ("To survive summary judgment, a plaintiff in a Food Stamp Program disqualification case must raise material issues of fact as to *each* alleged violation.").

Plaintiff argues that he is likely to succeed on the merits of his case because the USDA possessed no direct evidence of any misconduct on the part of Plaintiff, only the EBT audit, and also because the irregular EBT activity can be explained. The Court is not persuaded by Plaintiff's first argument that the USDA impermissibly based its decision only on an analysis of EBT transactions rather than direct evidence of wrong-doing. The regulations administering the Food Stamp Act expressly allow disqualifications from the SNAP based on "evidence obtained through a transaction report under an electronic benefit transfer system," 7 C.F.R. § 278.6; *see also* 7 U.S.C. § 2021(a), and numerous courts have upheld disqualification decisions based on EBT data comparable to that used in this case, *see McClain's Market v. United States,* 214 Fed.Appx. 502 (6th Cir.2006); *Kahin v. United States,* 101 F.Supp.2d 1299 (S.D.Cal.2000); *Choi v. United States,* 639 F.Supp.2d 1169 (D.Haw.2009); *Jackson v. United States,* No. C–08–02770 EDL, 2009 WL 941766, 2009 U.S. Dist. LEXIS 28871 (N.D.Cal. Apr. 3, 2009); *Hanna v. United States,* No. 04–74627, 2007 WL 1016988, 2007 U.S. Dist. LEXIS 23903 (E.D.Mich. Mar. 30, 2007). Thus, the USDA did not err in relying on circumstantial evidence in making its findings.

The USDA permanently disqualified Plaintiff's store from participating in the SNAP due to its finding that the store trafficked in food stamps based on the patterns of unusual, irregular, and inexpli-

cable activity in EBT data, as well as data indicating that the store's benefit redemptions exceeded its food inventory. Plaintiff argues that the irregular EBT activity can be explained by an analysis of household shopping behaviors. First, Plaintiff attempts to explain the pattern of multiple SNAP EBT transactions made from the same account within short periods of time. Plaintiff asserts that frequently individuals purchase groceries using their SNAP benefits and only after making that purchase are they able to determine the amount of benefits that remain. Thus, contends Plaintiff, after they find out the amount of their remaining benefits, many customers then make additional purchases. Plaintiff also argues that the irregular pattern of SNAP EBT transactions that exhaust most or all of an account can be explained by multiple members of the same household using the same card. Both of these arguments regarding household shopping behaviors were presented by Plaintiff's counsel at the August 13th hearing. No testimonial evidence, or other evidence, however, was submitted to support Plaintiff's arguments. Nor did Plaintiff address the suspicious transactions individually.

The Final Agency Decision included a sampling of transactions for which Plaintiff's same arguments did not sufficiently explain, including:

**Household # . . . 7231** with transactions on September 7, 2009 completed using the "key" or manual transmission followed in less than three minutes with a transaction of $76.69 completed using the "swipe" or automatic processing method. . . .

**Household # . . . 9317** conducted transactions on August 5, 2009 that are anomalous in that of the eight transactions six were completed using the "swipe" method and two were completed using the "key" method, all in slightly over fourteen hours. This same household is noted to have conducted a transaction of [sic] September 6, 2009 for $130.00 at 01:01:59 AM, occurring after reported business hours which, the record reveals, end at midnight.

**Household # . . . 1550** is noted to have completed two transactions on May 8, 2009, in the amounts of $143.39 and $174.59, totaling $317.98 in approximately five minutes, with a repeat of the pattern on September 8, 2009 with transactions of $199.41 and $225.30, totaling $424.71 in just over 28 minutes.

**Household # . . . 4000** is noted to have completed a transaction in the amount of $131.18 at 02:04:34 AM on September 4, 2009, after reported business hours, which, the record reveals, end at midnight.

**Household # . . . 4409** is noted to have completed two transactions on September 5, 2009 at 02:07:00 AM in the amount of $149.01 followed in two minutes with a transaction of $112.21 at 02:09:06 AM after reported business hours which, the record reveals, end at midnight.

(Ex. 2 to Compl.) The Final Agency Decision specifically considered and rejected Plaintiff's explanations, finding that "[t]hese transactions are representative of a number of similar transactions reflected in the letter of charges dated December 1, 2009. The cited data, taken in context of the record as a whole, including the materials detailing the depth of staple food stock at Liberty Mart, the checkout arrangements as documented, and the availability of store packaged fresh meats and a deli providing meat sold by weight might make it unlikely that households could conduct transactions in the amounts and time

spans detailed, strictly for eligible foods. Therefore appellant's contentions do not refute the Field Office[']s charges as stated." (*Id.*) Even assuming that Plaintiff's general explanations of the irregular EBT data could be adequately supported, the Court finds that Plaintiff has not demonstrated that he will be able to sufficiently explain the suspicious transactions at trial. Plaintiff merely offers the same explanations proffered to the administrative review officer without addressing whether the data, taken in the context of the record as a whole, makes it likely that these transactions were valid. Plaintiff further fails to offer any explanation for the transactions that occurred after business hours.

■ As to the pattern of SNAP EBT transactions that exhausted the majority or all of the individual recipient's SNAP benefit account within unusually short periods of time, the administrative review officer stated that "[a]lthough it is reasonable to consider that on occasion households would conduct repeat transactions in a single firm, it is highly unusual, even considering the proximity of Appellant firm to a low income housing project where affidavits indicate transportation is a challenge, are reasonable expenditures solely for eligible foods." (*Id.*) The administrative review officer noted several anomalous transactions, including those of Household # . . . 3549, which on September 7, 2009 "completed two transactions in under five minutes[,] the first for $87.45 and the second for $122.00[,] leaving a SNAP balance of $.55." (*Id.*) The Final Agency Decision also noted Household # . . . 1550, which "completed two transactions on May 8, 2009 in slightly more than five minutes, the first in the amount of

$143.39 and the second in the amount of $174.59, leaving a SNAP balance of $28.48." (*Id.*) In light of this evidence and the record before the Court at this time, the Court finds that Plaintiff's explanation that multiple shoppers from the same household are responsible for depleting SNAP benefit accounts within very short time is unlikely to succeed on the merits.

■ Plaintiff also asserts that the comparison of the volume of EBT transactions to the inventory of store goods in the Final Agency Decision was inconclusive since the inventory audit did not include certain invoices. While Plaintiff's counsel advanced this argument at the August 13th hearing, Plaintiff's sole witness, Floyd Rummage, was unable to confirm that the audit was inaccurate. Mr. Rummage testified that during the course of the investigation into the trafficking allegations, he turned over to the USDA, upon its request, any store invoices of which he was in possession. He also testified that for one month,[4] some of the invoices were missing and that he explained this to the USDA. Even if Plaintiff were likely to prove this fact at trial, a few missing invoices from only one month are not likely to explain the imbalance between the SNAP EBT transactions and store inventory over a period of six months. For example, the administrative review officer found that "[o]ver the course of the six month review period the data reveals that SNAP and WIC redemptions exceeded the reported staple inventory purchases by $74,247.68." (*Id.*) While the administrative review officer noted that this calculation did not include an assessment of the volume of back stock in the store, Plaintiff has not presented to this Court any evidence of the likely value or

---

4. Mr. Rummage did not specify the month and year for which these invoices were missing, nor did he specify the type or the extent of the missing invoices.

volume of the store's back stock. The administrative review officer also noted that "[t]he record reveals that Appellant has stated approximately 35% of the firm's business is comprised of cash or credit sales." If the amount of food sales from cash or credit cards were added to the total food sales, the difference between the sales and inventory would presumably be even greater, and Plaintiff has not proffered any argument to dispute this finding. Therefore, the Court finds that Plaintiff has not demonstrated that he is likely to prevail on the merits.

### 2. Irreparable Harm

■ Plaintiff argues that he can demonstrate that he will be irreparably harmed absent a stay of the disqualification. In considering whether irreparable harm will occur, generally a plaintiff's harm is not irreparable if it is fully compensable by money damages. *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir.1992). Furthermore, "[t]here must be a likelihood that irreparable harm will occur. Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." 11A Charles A. Wright *et al., Federal Practice and Procedure* § 2948.1 (2d ed. 1995).

In support of his argument, Plaintiff submitted the affidavit of Samir Alkabsh, Plaintiff's son "who is familiar with the business and accounting of the Liberty Mart." (Ex. 1 to Application for Temporary Stay, Aff. of Samir Alkabsh ¶¶ 1, 4.) Samir Alkabsh attested to the fact that "[s]ince Liberty Mart's suspension from SNAP, there has been a significant reduction of sales in the store" and that "[u]nless the suspension is immediately lifted, the store will not be able to remain open and … will be forced to close." (*Id.* at ¶¶ 9–10.) At the August 13th hearing, Floyd Rummage testified that the store's income has been reduced by 40–50% since the USDA permanently disqualified the store from the SNAP and also testified that the store cannot continue to operate at such a loss.

■ While as a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm, the loss of an ongoing business can constitute irreparable harm. *See Performance Unlimited v. Questar Publishers,* 52 F.3d 1373 (6th Cir.1995); *see also Detroit Metro Airport Taxi Ass'n v. Detroit Metro Wayne County Airport Auth.,* No. 09–cv–14041, 2009 U.S. Dist. LEXIS 96300 (E.D.Mich. Oct. 16, 2009) (reasoning that *Performance Unlimited* does not stand "for the proposition that financial ruin of a company *necessarily* constitutes irreparable injury"). While Plaintiff presented evidence that he will be forced to close his store absent a stay, the Court notes that Plaintiff has continued to operate his business after the sanctions were imposed from at least February 19, 2010—a period of over five months—which belies the fact that Plaintiff will be forced to close his business absent the ability to participate in the SNAP. (*See* Ex. 1 to Compl.) Under these facts, the Court finds that Plaintiff has not demonstrated that he will suffer irreparable harm absent injunctive relief.

### III. CONCLUSION

Based upon the foregoing, the Court finds that injunctive relief is not appropriate in this case. The legality of Plaintiff's disqualification from the SNAP will be fully determined by a trial on the merits. The Court is prepared to place this matter on a fast track for trial. Therefore, the

Court **DENIES** Plaintiff's application for temporary stay.