NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0429n.06

**No. 16-5016**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>JAY SHRI GANESH; HITESHKUMAR PATEL,</td><td>)</td><td rowspan="12">

**FILED**
Jul 28, 2016
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Plaintiffs-Appellants,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Defendant-Appellee.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

BEFORE: SUHRHEINRICH, ROGERS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

The Department of Agriculture permanently disqualified plaintiffs from participating in the Food Stamp Program after finding evidence of trafficking in such benefits at their convenience store. Plaintiffs unsuccessfully sought review of this decision in district court. On appeal, they argue the district court improperly granted summary judgment in favor of the government because it relied upon unauthenticated documents and found no genuine issue of material fact, despite plaintiffs' protestations to the contrary. We disagree and affirm.

I.

The district court aptly described the pertinent facts, to which the parties do not take issue:

Jay Shri Ganesh and Hiteshkumar Patel own and operate a small convenience store in Inez, Kentucky. On October 28, 2014, they received a letter from the

United States Department of Agriculture's Food and Nutrition Service ("FNS") stating that the FNS believed that they had violated the terms and provisions of the Food Stamp Program. After investigating further, the FNS determined that the plaintiffs had trafficked in Supplemental Nutrition Assistance Program ("SNAP") benefits, so the FNS permanently disqualified the plaintiffs from participating in the SNAP program. This disqualification means that the plaintiffs cannot accept SNAP benefits as payment for goods, thus eliminating some of the store's customer base.

The FNS's decision to disqualify the plaintiffs from the SNAP program was largely based on an analysis of electronic benefit transfers ("EBT") at the store. The FNS identified several types of suspicious transfers that regularly occurred at the plaintiffs' store. First, the FNS found 118 transfers in which the same EBT card was used at the store within a 24-hour period. Many of these charges were for the same amount. Second, the FNS identified many transactions where a customer would spend nearly all of his or her monthly SNAP allotment within a very short timeframe, a pattern that is inconsistent with typical SNAP recipient behavior. Third, the FNS identified 275 transactions that it described as "excessively large"—while the average SNAP purchase at a Kentucky convenience store is $7.09, the plaintiffs' store handled transactions of amounts up to $253.98. Finally, after visiting the plaintiffs' store, the FNS determined that nothing about the store could account for these suspicious transactions. Instead, the store offered a limited amount of food that a customer could purchase with SNAP benefits, the counter space was small and not conducive to large transactions, and the store did not offer grocery carts or shopping baskets. Based on the electronic data and the in-store visit, the FNS determined that SNAP-benefit trafficking provided the best explanation for the unusual transactions. Thus, the FNS permanently disqualified the plaintiffs from the SNAP program.

The plaintiffs appealed the FNS's decision. The Administrative Review Branch of the FNS reviewed the decision and determined that the FNS had established a prima facie case for SNAP trafficking by a preponderance of the evidence. The Review Branch also determined that the defendant had failed to offer any "reasonable explanations" for the suspicious transaction data. Because SNAP regulations mandate permanent disqualification as the punishment for SNAP trafficking, the Review Branch held that the imposed sanction was appropriate.

Plaintiffs sought review of this decision in district court pursuant to 7 U.S.C. § 2023(a).

In a well-reasoned opinion, the district court concluded that "[t]he record contains an abundance

of evidence to support the SNAP-trafficking determination" and granted summary judgment in favor of the United States. Ganesh and Patel appeal.

## II.

The Secretary of Agriculture may permanently disqualify any approved retail food store from participation in the SNAP program upon "the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store." 7 U.S.C. § 2021(b)(3)(B). Upon disqualification, a retail food store operator may obtain judicial review by way of a "trial de novo." § 2023(a)(13), (15). This trial "is limited to determining the validity of the administrative action; the severity of the sanction is not open to review." *Goldstein v. United States*, 9 F.3d 521, 523 (6th Cir. 1993).

"The burden of proof in the judicial review proceeding is upon the aggrieved store to establish the invalidity of the administrative action by a preponderance of the evidence." *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991). "To survive summary judgment, a plaintiff in a Food Stamp Program disqualification case must raise material issues of fact as to *each* alleged violation." *McClain's Mkt. v. United States*, 214 F. App'x 502, 505 (6th Cir. 2006). Accordingly, "our task on appellate review is to determine whether [the FNS] 'acted within its authority in permanently disqualifying [plaintiffs] from the food stamp program.'" *Bakal Bros. v. United States*, 105 F.3d 1085, 1088 (6th Cir. 1997) (citation omitted).

## III.

Preliminarily, plaintiffs argue the district court erred in entering summary judgment by relying upon "unverified and unsworn" documents in contradiction to our holding in *Saunders v. United States*, 507 F.2d 33 (6th Cir. 1974). In *Saunders*, we found summary judgment to be improper in a Food Stamp Act disqualification case because "none of the supporting documents

[were] sworn to" in compliance with then-Federal Rule of Civil Procedure 56(e)'s strict authentication requirement. *Id.* at 35; *see also Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009) (noting our "court's repeated emphasis that unauthenticated documents do not meet the requirements of Rule 56(e)"). Given this failure, we found that the unauthenticated documents "were of no greater dignity" than "unsworn denials" by the plaintiff's attorney, and therefore the government did not meet its summary judgment burden. *Saunders*, 507 F.2d at 35–37.

In the present case, this argument faces the insurmountable obstacle of not having been raised below. It is well-established that "[i]f a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and we will review such objections only to avoid a gross miscarriage of justice." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994). In response to the government's dispositive motion below, Ganesh and Patel neither cited *Saunders*, nor objected to the authenticity of the government's supporting materials. Instead, and as admitted on appeal, they focused exclusively on the sufficiency of the evidence contained within these materials. Thus, their newly found evidentiary objection is not presented and is deemed waived.

Nor is it a gross miscarriage of justice not to address the merits of their objection. Amended in 2010, Rule 56 now provides that parties asserting no genuine issue of material fact need only "cit[e] to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). It then permits a party to "object that the material cited to support or dispute a fact *cannot be presented in a form that would be admissible in evidence.*" Fed. R. Civ. P. 56(c)(2) (emphasis added). Correspondingly, the amended rule specifically "omit[s] as unnecessary" "[t]he

requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration." Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment. Given that Rule 56 no longer draws such a bright line between authenticated and unauthenticated evidence for purposes of summary judgment and that Ganesh and Patel made no objection below that the documentary evidence could not "be presented in a form that would be admissible in evidence," passing on plaintiffs' technical objection to the form of the government's evidence does not constitute a gross miscarriage of justice.

IV.

On the merits, plaintiffs' argument boils down to the following: (1) the government's proofs were circumstantial and thus did not "conclusively" prove a trafficking pattern; (2) plaintiffs lacked the ability to uncover abuse because SNAP regulations prohibit them from identifying particular card users; (3) Patel's affidavit attesting that "to the best of my knowledge, . . . [plaintiffs did not] exchange SNAP benefits for cash []or participate in a fraudulent SNAP transaction" shows there is a genuine dispute of material facts; and (4) plaintiffs maintain a market advantage over their competitors—lower prices—with respect to soft drinks and other SNAP-qualifying beverages due to a contract with a local Coca-Cola distributor, thus explaining large and multiple purchases. Plaintiffs advanced these arguments below. In dismissing these arguments, the district court's opinion more than adequately shows Ganesh and Patel misunderstand their burden.

Take the district court's conclusion regarding multiple transactions by a single beneficiary within a short period of time. In crediting plaintiffs' argument "that it would be possible for someone to come into the store, make a purchase, then give his card to someone else to make a purchase," the district court noted that "this explanation could account for *some* of the

suspicious transactions. But this explanation fails to account for *all* of the suspicious transactions." (Emphasis added.) The district court then highlighted two particularly problematic and unexplained transactions of $63.49 and $107.94 in less than two minutes on the same account.[1] Plaintiffs make no rebuttal to these transactions on appeal, and instead focus on other transactions that occurred between thirty minutes and six hours apart. From these, they contend "one could conclude that eligible food sales occurred as opposed to trafficking SNAP benefits." One could conclude this. But that is not the standard—it was their burden to raise material issues of fact as to *each* alleged violation, and having failed to do so, summary judgment was warranted.

The district court's conclusions as to the other categories of violations are equally well-reasoned, and we find no reason to disturb them.

V.

We therefore affirm the district court's grant of summary judgment in favor of the government.

---

[1]In total, the FNS documented 118 sets of similar violations by 29 households, including times in which the same household had two transactions of over fifty dollars each within two to three minutes of each other.